UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

FARHAN AHMED,

        Petitioner,

v.

JOSEPH E. FREDEN, *in his official capacity as Deputy Field Office Director, Buffalo Federal Detention Facility*[1],

        Respondent.

**DECISION AND ORDER**

6:23-CV-06590 EAW

---

## INTRODUCTION

Represented by counsel, petitioner Farhan Ahmed ("Petitioner"), a civil immigration detainee currently held at the Buffalo Federal Detention Facility ("BFDF") in Batavia, New York, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Dkt. 1). In particular, Petitioner claims that his continued detention when "there is no significant likelihood of [his] removal in the reasonably foreseeable future" is a violation of his Fifth Amendment liberty interest. (*Id*. at ¶ 35). For the reasons that follow, the Court finds that Petitioner has met his initial burden of demonstrating that there is good reason to believe there is no significant likelihood of his removal in the reasonably foreseeable future, and

---

[1]    Joseph E. Freden has replaced Jeffrey Searls as the officer in charge of the Buffalo Federal Detention Facility, and has been automatically substituted as the respondent pursuant to Federal Rule of Civil Procedure 25(d). The Clerk of Court is direct to amend the caption of this action accordingly.

that the burden has thus shifted to Respondent to rebut this showing. The Court further grants Respondent an opportunity to supplement his submissions by no later than August 23, 2024.

## BACKGROUND

### I.  Factual Background

Petitioner is a citizen and national of Pakistan. (Dkt. 4-1 at ¶ 5; *see* Dkt. 1 at ¶¶ 4, 24). On October 14, 2001, Petitioner entered the United States on a non-immigrant visa. (Dkt. 4-1 at ¶ 5.). Petitioner became a Lawful Permanent Resident on July 22, 2004. (*Id.* at ¶ 6).

On June 9, 2005, Petitioner was arrested for murder in the 2nd degree, tampering with evidence, and criminal possession of a weapon in the 4th degree. (*Id.* at ¶ 7). In early 2005, Petitioner began living with his cousin and his cousin's wife. (*Id.*). The cousin's wife has having an affair with another individual ("the victim"), and when she tried to end the affair, the victim threatened to blackmail her. (*Id.*). Petitioner and his cousin learned of the victim's blackmail threat and planned to kill him. (*Id.*). They invited the victim to their residence, choked the victim with a scarf and their hands, and beat him to death with a metal pipe. (*Id.*; Dkt. 4-2 at 5). Petitioner and his cousin then moved the victim's body and disposed of the scarf and metal pipe. (*Id.*). The victim's cause of death was ruled a homicide. (*Id.*). Petitioner was convicted of manslaughter in the 1st degree in New York Supreme Court, Queens County and sentenced to 21 years in prison, and the Second Department affirmed his sentence. (Dkt. 4-1 at ¶¶ 8-9).

The Department of Homeland Security ("DHS") issued a Warrant of Removal/Deportation to Petitioner on March 2, 2009. (*Id.* at ¶ 10). DHS also issued an immigration detainer to Green Haven Correctional Facility so that DHS would be notified before Petitioner was to be released from New York State custody. (*Id.* at ¶ 11). On December 21, 2009, Immigrations and Customs Enforcement ("ICE") encountered Petitioner while he was in state custody and served him with a Notice to Appear. (*Id.* at ¶¶ 13-14). Petitioner was alleged to be subject to removal pursuant to Section 237(a)(2)(A)(i) and (iii) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(A)(i) and (iii), and an Immigration Judge ordered him removed to Pakistan on January 8, 2010. (*Id.* at ¶¶ 14-15).

ICE arrested and detained Petitioner at BFDF upon his release from state custody on April 13, 2023. (*Id.* at ¶ 16). The next day, DHS issued a Warrant of Removal/Deportation to Petitioner and requested travel documents for Petitioner from the Government of Pakistan. (*Id.* at ¶¶ 17-18). On July 13, 2023, ICE issued a Decision to Continue Detention to Petitioner, which explained that Petitioner would be detained until his removal from the United States because Petitioner had not demonstrated that he would not pose a danger to the community or a significant flight risk if released, pending his removal. (*Id.* at ¶ 20; Dkt. 4-2 at 21). Since requesting travel documents from the Government of Pakistan in April 2023, ICE has been "regularly following-up with the Consulate every few weeks." (Dkt. 4-1 at ¶ 21).

Petitioner has provided information to DHS to facilitate his removal, including a copy of his birth certificate and documents related to his immigration status in the United

States, and he filled out travel documents when he arrived at BFDF. (Dkt. 1 at ¶ 24). He participated in an in-person interview with an official from the Pakistani Consulate on August 11, 2023, and he was told by his "deportation officer" that the Consulate normally issues travel documents within one month after an interview. (*Id.*). Petitioner communicated with the Pakistani Embassy via phone on March 20, March 27, April 4, and May 2, 2024, about his travel documents, and each time, he was told that his request was in process but that an estimated date of completion was unavailable. (Dkt. 8-1 at ¶ 2). On April 15, 2024, ICE issued Petitioner another Decision to Continue Detention, which stated that ICE had "reason to believe there's a significant likelihood that your removal will occur in the reasonably foreseeable future," and, accordingly, that Petitioner would remain detained. (Dkt. 8-2).

## II. Procedural Background

Petitioner, who at the time was proceeding *pro se*, commenced this action on October 12, 2023. (Dkt. 1). Respondent filed a response in opposition. (Dkt. 4). Following the appearance of counsel on Petitioner's behalf (Dkt. 5; Dkt. 6), Petitioner filed a reply (Dkt. 7). Petitioner thereafter filed a notice advising the Court of Petitioner's communications with Pakistani officials regarding his travel documents and that ICE had issued another Decision to Continue Detention on April 15, 2024. (Dkt. 8).

## DISCUSSION

### I. Jurisdiction

The federal habeas corpus statute gives district courts jurisdiction to hear immigration-related detention cases. *See* 28 U.S.C. § 2241(c)(3); *Zadvydas v. Davis*, 533

U.S. 678, 688 (2001) (holding that "§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention" in immigration cases). District courts do not have jurisdiction over challenges to the legality of final orders of deportation, exclusion, and removal; jurisdiction to review such challenges rests exclusively in circuit courts. *See Gittens v. Menifee*, 428 F.3d 382, 384 (2d Cir. 2005) ("[The REAL ID Act, 119 Stat. 231, § 106(a) (May 11, 2005)] eliminates habeas jurisdiction over final orders of deportation, exclusion, and removal, providing instead for petitions of review . . . which circuit courts alone can consider."). Respondent does "not dispute that this Court has subject matter jurisdiction over Petitioner's challenge to his continued detention in custody." (Dkt. 4 at ¶ 1).

## II. <u>Legal framework</u>

As discussed above, Petitioner is subject to an order of removal. As such, he is detained pursuant to 8 U.S.C. § 1231, which governs detention of individuals subject to a final order of removal. *Johnson v. Guzman Chavez*, 594 U.S. 523, 534 (2021).

When an Immigration Judge enters a final order of removal against an individual, "the Government ordinarily secures the alien's removal during a subsequent 90-day statutory 'removal period,' during which time the alien normally is held in custody." *See Zadvydas*, 533 U.S. at 682; *see also Wang v. Ashcroft*, 320 F.3d 130, 145 (2d Cir. 2003) ("[d]uring the [90-day] removal period" under § 1231, "the Attorney General shall detain the alien"). The removal period begins on the latest of: (1) the date the removal order becomes administratively final; (2) "[i]f the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order"; or (3)

the date the alien is released from detention or confinement, unless such detention or confinement is the result of an immigration process. 8 U.S.C. § 1231(a)(1)(B).

After expiration of the 90-day removal period, 8 U.S.C. § 1231(a)(6) allows the government to continue to detain certain classes of aliens or to release them, subject to appropriate terms of supervision. *Id*. In *Zadvydas*, the Supreme Court read "an implicit limitation into" § 1231(a)(6), holding that "the statute, read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite detention." 533 U.S. at 689. The *Zadvydas* Court further adopted a 6-month "presumptively reasonable period of detention," and instructed that "[a]fter this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id*. at 701; *see also Wang*, 320 F.3d at 146 ("The [*Zadvydas*] Court stated that detention is presumptively reasonable for six months following a final removal order, and that, after the first six months, detention violates § 241 if (1) an alien demonstrates that there is no significant likelihood of removal in the reasonably foreseeable future and (2) the government is unable to rebut this showing.").

### III. **Petitioner has Satisfied his Initial Burden**

As noted above, Petitioner bears the initial burden to demonstrate that there is good reason to believe there is no significant likelihood he will be removed in the reasonably foreseeable future. *See Pineda v. Shanahan*, 258 F. Supp. 3d 372, 379 (S.D.N.Y. 2017) (noting that *Zadvydas* "places an initial burden on the detainee"). "In analyzing the

likelihood of removal, courts consider a variety of factors, including the existence of a repatriation agreement with the target country, the target country's prior record of accepting removed aliens, and specific assurances from the target country regarding its willingness to accept an alien." *Hassoun v. Sessions*, No. 18-CV-586-FPG, 2019 WL 78984, at *4 (W.D.N.Y. Jan. 2, 2019) (citations omitted). Further, "[w]hat constitutes the 'reasonably foreseeable future' will depend on the length of detention." *Id.*; *see Zadvydas*, 533 U.S. at 701 ("[A]s the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink."). "In effect, the parties' respective burdens shift as the length of detention increases." *Hassoun*, 2019 WL 78984, at *4 (collecting cases).

Here, Petitioner's 90-day removal period began on April 13, 2023, when he was detained by ICE upon his release from state confinement, *see* 8 U.S.C. § 1231(a)(1)(B)(iii)[2], and expired on July 12, 2023. The 6-month presumptively reasonable period of detention has thus also expired. Accordingly, the Court must assess whether Petitioner has demonstrated good reason to believe that there is not a significant likelihood of his removal in the reasonably foreseeable future.

---

[2] The 90-day removal period can be suspended pursuant to 8 U.S.C. § 1231(a)(1)(C) "if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." *Id*. There is no claim in this case that Petitioner engaged in such behavior. Indeed, Petitioner has alleged he has cooperated in facilitating his removal to Pakistan, and Respondent has not disputed this allegation. (*See* Dkt. 1 at ¶ 24).

Respondent, citing cases in this District, argues that the passage of time alone is insufficient for Petitioner to establish that he is not significantly likely to be removed in the reasonably foreseeable future. (Dkt. 4-3 at 3-4). However, "the passage of time combined with" the "government [being] no closer to . . . repatriating [a detainee] than they were once they first took him into custody" is sufficient to satisfy Petitioner's initial burden. *Singh v. Whitaker*, 362 F. Supp. 3d. 93, 102-03 (W.D.N.Y. 2019), *appeal withdrawn*, No. 19-729, 2019 WL 2590582 (2d Cir. May 1, 2019). "Good reason to believe does not place a burden upon the detainee to demonstrate no reasonably foreseeable, significant likelihood of removal or show that his detention is indefinite; it is something less than that." *Senor v. Barr*, 401 F. Supp. 3d 420, 430 (W.D.N.Y. 2019) (citations, quotations, and alterations omitted), *appeal withdrawn*, No. 19-3333, 2020 WL 1862195 (2d Cir. Feb. 6, 2020).

Here, Petitioner has now been subjected to almost 16 months of detention since his removal period began. Accordingly, a determination of the "reasonably foreseeable future" is decidedly limited at this time. *See Aung v. Barr*, No. 20-CV-681-LJV, 2020 WL 4581465, at *3 (W.D.N.Y. Aug. 10, 2020) (holding that because petitioner was "subjected to more than thirteen months of post-removal-order detention—more than twice the presumptively reasonable period," that "[w]hat counts as the 'reasonably foreseeable future' therefore is quite narrow." (quotation and citation omitted)).

Further, not only has there been a substantial passage of time, there does not appear to be any information before the Court at this time demonstrating that ICE has made progress in repatriating Petitioner. *Cf. Lorenzo v. Barr,* No. 20-CV-1372 (JLS), 2021 WL

84283, at *6 (W.D.N.Y. Jan. 11, 2021) ("The mere passage of time beyond the six-month presumptively reasonable period does not satisfy his burden under *Zadvydas*."). The reasons for the lack of any such progress are unexplained, particularly since Respondent asserts, "There are no institutional barriers to Petitioner's removal, as evidenced by ICE's removal of hundreds of noncitizens to Pakistan in the recent past." (Dkt. 4-3 at 4 (noting that ICE removed 122, 244, and 241 noncitizens to Pakistan in 2021, 2020, and 2019, respectively)). Indeed, despite Respondent's argument to the contrary, the fact that ICE has routinely removed noncitizens to Pakistan underscores that there may be good reason to believe that there is not a significant likelihood that Petitioner will be removed in the reasonably foreseeable future. Respondent acknowledges that the Pakistani Consulate "has the documents necessary to issue a travel document for Petitioner's removal." (*Id.* at 5). Petitioner alleges in his complaint that the "deportation officer," presumably an ICE officer, told him that the Pakistani Consulate normally issues travel documents within one month of an interview and that he was interviewed one year ago, on August 11, 2023. (Dkt. 1 at ¶ 24). Respondent has not disputed these allegations. While Respondent states that ICE has been following up with the Consulate since April 2023, the Court is left with no estimation as to when removal may be effectuated. *See Cyclewala v. Searls*, No. 6:21-CV-06372 EAW, 2021 WL 5989781, at *5 (W.D.N.Y. Dec. 16, 2021) (finding ICE's failure to explain the lack of progress in effectuating petitioner's removal, especially when respondent conceded that India had "a good prior record of accepting removed aliens[,]" left the Court unable to estimate when removal would occur); *Singh,* 362 F. Supp. 3d at 102 ("And if DHS has no idea of when it might reasonably expect Singh to be repatriated,

this Court certainly cannot conclude that his removal is likely to occur—or even that it *might* occur—in the reasonably foreseeable future. So this Court is left to guess whether his deportation might occur in ten days, ten months, or ten years.").

Petitioner submitted a supplemental declaration indicating that he has spoken to Pakistani officials four times since March 2024 and that these officials could not say how long the repatriation process would take, nor could his "deportation officer." (Dkt. 8-1 at ¶¶ 2-3). Neither Pakistani nor DHS officials have asked Petitioner to provide additional information to facilitate issuance of his travel documents, according to Petitioner. (*Id.*). Petitioner also submitted a copy of a Decision to Continue Detention, which ICE issued to him on April 15, 2024. (Dkt. 8-2). The decision states that ICE is working to secure a travel document for Petitioner, that the document is "expected," and that "ICE has reason to believe there's a significant likelihood that your removal will occur in the reasonably foreseeable future[.]." (*Id.*). No additional details or justification were offered.

In sum, based on the foregoing, Petitioner has satisfied his initial burden of showing that there is good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future.

**IV.   Respondent will be Permitted to Supplement his Submission**

The Court finds that, at this time, Respondent has failed to rebut Petitioner's showing. Respondent argues that "the Government is working with the Embassy of Pakistan to obtain travel documents for Petitioner's removal." (Dkt. 4-3 at 4). However, almost 16 months have elapsed since ICE took Petitioner into custody, and he apparently remains in the United States. As such, "this Court is left to guess whether [Petitioner's]

- 10 -

deportation might occur in ten days, ten months, or ten years." *Singh*, 362 F. Supp. 3d at 102.

Further, while the Court does not find at this time that this is "a case where the government has been dilatory in its attempts to effectuate removal," *Hassoun*, 2019 WL 78984, at *5, that is not determinative. "[U]nder *Zadvydas*, the reasonableness of Petitioner's detention does not turn on the degree of the government's good faith efforts. Indeed, the *Zadvydas* court explicitly rejected such a standard." *Id.* DHS's active efforts to obtain travel documents from Pakistan are not enough to demonstrate a likelihood of removal in the reasonably foreseeable future where the record before the Court contains no information to suggest a timeline on which such documents will actually be issued. *See id.* at *6 ("[D]etention may not be justified on the basis that removal to a particular country is likely at some point in the future; *Zadvydas* permits continued detention only insofar as removal is likely in the reasonably foreseeable future.").

However, given the procedural posture of this case, the Court finds it appropriate to afford Respondent an opportunity to supplement his submissions before making a final determination. In particular, the Court notes that the original *pro se* Petition, to which Respondent filed his opposition, is devoid of meaningful factual allegations and did not fully inform Respondent of the basis for Petitioner's claims. It was not until the counseled reply was filed that Petitioner's arguments were fully fleshed out. Respondent has not had an opportunity to respond to the arguments made in the counseled reply, and Petitioner filed supplemental information with the Court in April 2024, after briefing on the Petition was completed. Therefore, the Court concludes that an opportunity for Respondent to

respond is warranted, to ensure that the Court's final determination is based on an appropriately developed record.

The Court thus instructs Respondent to file any supplement to his opposition to the Petition by no later than August 23, 2024. The Court is particularly interested in any information as to efforts to obtain the issuance of travel documents that have been made since Respondent's last submission and the status of those efforts. *See Rual v. Barr*, No. 6:20-CV-06215 EAW, 2020 WL 3972319, at *4 (W.D.N.Y. July 14, 2020) (providing respondents with an opportunity to file supplemental briefing when respondents filed their opposition to a *pro se* petition and petitioner subsequently became counseled and filed a reply); *Senor*, 401 F. Supp. 3d at 432 (giving the government the opportunity to submit "evidence specific to [the petitioner's] case," which "might include correspondence from Haitian officials indicating that they are moving swiftly to provide [the petitioner] with travel documents or explaining reasons for the delay that appear to be resolved or resolvable," or a well-supported estimated date by which repatriation is expected to occur).

## CONCLUSION

For the foregoing reasons, the Court concludes that Petitioner has met his initial burden of demonstrating that there is good reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable future. The Court grants Respondent an opportunity to supplement his submissions by no later than August 23, 2024, in an attempt to rebut that showing.

- 13 -

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:      August 9, 2024
            Rochester, New York